**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION AT COVINGTON**

CIVIL ACTION NO. 2:20-CV-0015 (WOB-CJS)

TARA BLESSING, ET AL.                                      PLAINTIFFS,

VS.

CABLE NEWS NETWORK, INC.,                                  DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

CIVIL ACTION NO. 2:20-CV-0017 (WOB-CJS)

TARA BLESSING, ET AL.                                      PLAINTIFFS,

VS.

NBCUniversal Media, LLC,                                   DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

CIVIL ACTION NO. 2:20-CV-0018 (WOB-CJS)

TARA BLESSING, ET AL.                                      PLAINTIFFS,

VS.

WP COMPANY LLC,
D/B/A THE WASHINGTON POST                                  DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before this Court are motions to dismiss by the Cable Network News, Inc. ("CNN"), NBCUniversal Media, LLC ("NBC"), and WP Company LLC ("The Post"). The Court has carefully reviewed the motions and concludes that oral argument is unnecessary. It therefore issues the following Memorandum Opinion and Order.

1

### *Factual and Procedural Background*

Twelve students from Covington Catholic High School ("CCH") brought this action in response to publications by CNN, NBC, and The Post concerning events that transpired at the Lincoln Memorial. The following facts of this case are well documented.[1]

Plaintiffs were present at the Lincoln Memorial in Washington, D.C. on January 18, 2019, where they participated in the annual "March for Life". On that date, Plaintiffs were purportedly involved in an incident that began with an encounter with the Black Hebrew Israelites and ended with a faceoff between Native American Nathan Phillips and CCH student Nicholas Sandmann. This led to numerous publications by several news outlets.

In response to these publications, Plaintiffs sued CNN, NBC, and The Post. Plaintiffs seek to incorporate by reference portions of Sandmann's complaints against CNN, NBC, and The Post. *See* Cov. Civil Action No. 2:19-cv-19, *Sandmann v. WP Company LLC*; Cov. Civil Action No. 2:19-cv-31, *Sandmann v. Cable News Network, Inc.*; Cov. Civil Action No. 2:19-cv-56, *Sandmann v. NBCUniversal Media, LLC*.

---

[1] *See* Cov. Civil Action No. 2:19-cv-19-WOB-CJS, *Sandmann v. WP Company LLC* (settled); Cov. Civil Action No. 2:19-cv-31-WOB-CJS, *Sandmann v. Cable News Network, Inc.* (settled); Cov. Civil Action No. 2:19-cv-23-WOB-CJS, *Sandmann v. The New York Times Company* (MTD denied); Cov. Civil Action No. 2:19-cv-56-WOB-CJS, *Sandmann v. NBCUniversal Media, LLC* (MTD granted in part and denied in part); Cov. Civil Action No. 2:20-cv-24-WOB-CJS, *Sandmann v. CBS News, Inc. et al* (MTD denied); Cov. Civil Action No. 2:20-cv-25-WOB-CJS, *Sandmann v. ABC News, Inc. et al* (MTD denied); 2:20-cv-26-WOB-CJS, *Sandmann v. Gannett Co., Inc.* (MTD pending); 2:20-cv-27-WOB-CJS, *Sandmann v. Rolling Stone, LLC et al* (MTD denied).

In their suit against CNN and its alleged agent Bakari Sellers, Plaintiffs allege the following seven causes of action: civil harassment pursuant to KRS § 525.070; civil harassing communications pursuant to KRS § 525.080; civil threatening pursuant to KRS § 508.080; civil menacing pursuant to KRS § 508.050; defamation; invasion of privacy; and aiding and abetting. Plaintiffs assert only defamation, invasion of privacy, and aiding and abetting claims against NBC and The Post.

On October 7, 2020, this Court granted Sellers' motion to dismiss Plaintiffs' claims for lack of personal jurisdiction. CNN, NBC, and The Post now file separate motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing the Plaintiffs fail to state a claim upon which relief can be granted.

### *Standard of Review*

When the Court decides a motion brought under Federal Rule of Civil Procedure 12(b)(6), the plaintiffs' complaint is construed in a light most favorable to them and the allegations are accepted as true. The Court must determine whether the plaintiff pled "enough facts to state a claim to relief that is plausible on its face" and not merely conceivable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility arises when the complaint's factual content allows a reasonable inference of defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

3

If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint has failed to show the plaintiff is entitled to relief. *Id.* at 679 (citing FED. R. CIV. P. 8(a)(2)).

### *Analysis*

**A.   CNN, NBC, and The Post's Motions to Dismiss Must be Granted Concerning the Common Law Causes of Action**

Plaintiffs seek first to hold CNN, NBC, and The Post liable for common law claims of defamation, invasion of privacy, and aiding and abetting. Because Plaintiffs' common law memoranda in opposition are practically identical on this point, the defendants' motions to dismiss are consolidated below to provide a concise, judicially efficient, and consistent ruling. *Blessing et al v. Cable Network News, Inc*, Cov. Civil Action No. 2:20-cv-15 (Doc. 26); *Blessing et al v. NBCUniversal Media, LLC*, 2:20-cv-17 (Doc. 13); and *Blessing et al v. WP Company LLC*, 2:20-cv-18 (Doc. 21).

**1. Defamation**

**a. Prior Opinions Concerning Incorporated Publications**

Plaintiffs allege CNN, NBC, and The Post defamed them through various publications, which they incorporate by reference from Sandmann's respective complaints. (Doc. 1 at ¶¶ 8, 12-13 (CNN));

(Doc. 1 at ¶¶ 8-10 (NBC)); (Doc. 1 at ¶¶ 8-10 (The Post)). Below is a summary of the incorporated statements:[2]

1. *Sandmann v. WP Company LLC, d/b/a The Washington Post*, Cov. Civil Action No. 2:19-cv-19: (Doc. 47 at 30-36, Nos. 1, 2, 3, 5, 8, 9, 10-12, 14, 16, 22, 23-24, 26, 29-30, 32-33);

2. *Sandmann v. Cable News Network, Inc.*, Cov. Civil Action No. 2:19-cv-31: (Doc. 31-10 at Nos. 1, 4, 6, 8, 10-20, 22, 24-36, 38-39, 41-46, and 49-53); and

3. *Sandmann v. NBCUniversal Media, LLC*, Cov. Civil Action No. 2:19-cv-56: (Doc. 42-1 at Nos. 1, 2, 3, 5, 8, 9-16, 18-19, 21-24, 26-27, 29, 30-37, 41-45, and 48).

As an initial matter, Plaintiffs concede that this Court dismissed most statements incorporated by reference in the Sandmann Opinions against CNN, NBC, and The Post.[3] For reasons outlined in separate Opinions, this Court permitted Sandmann to proceed on the following statements:

1. *Sandmann v. WP Company LLC, d/b/a The Washington Post*, Cov. Civil Action No. 2:19-cv-19: (Doc. 64 at 2) (dismissing all statements, except statements 10, 11, and 33, to the extent that these statements claim Sandmann "blocked" Nathan Phillips and "would not allow him to retreat.").

2. *Sandmann v. Cable News Network, Inc.*, Cov. Civil Action No. 2:19-cv-31: (Doc. 43 at 2) (dismissing all statements, except statements 24, 33, 49, and 51, to the extent that the statements concern Phillips' allegation that he was blocked by Sandmann and not permitted to retreat).

3. *Sandmann v. NBCUniversal Media, LLC*, Cov. Civil Action No. 2:19-cv-56: (Doc. 43 at 3) (dismissing all statements, except paragraphs 402(c), 457(d), 457(e), 500(f), and 549(c) of Sandmann's First Amended Complaint, as it relates

---

[2] The numbers correspond to the relevant charts concerning the publications.
[3] *See Blessing et al v. NBCUniversal Media, LLC*, Cov. Civil Action No. 2:20-cv-17, (Doc. 17) (after partially granting Sandmann's motion to reconsider, this Court allowed only three statements to proceed against The Post, four statements against CNN, and five statements against NBC).

> to statements that Sandmann "blocked" Phillips or did not
> allow him to retreat).

In all three cases, this Court explained that the remaining statements in Sandmann's complaints failed as a matter of law because the statements: (1) were not of and concerning any specific individual; (2) were not capable of a defamatory meaning; and (3) were non-actionable opinions.

Plaintiffs do not articulate why dismissal of these statements are incorrect or inconsistent in the instant matter. They instead preserve the issue for appeal. Therefore, this Court sees no need to revisit its conclusions, and all statements dismissed in Sandmann's cases are likewise dismissed for the same reasons. The following analysis thus considers only whether the remaining twelve statements create plausible defamation claims.

### b. Analysis on Remaining Statements

In Kentucky, a cognizable claim for defamation requires plaintiffs to prove the following elements:

(a) A false and defamatory statement concerning another;
(b) An unprivileged publication to a third party;
(c) Fault amounting at least to negligence on the part of the publisher; and
(d) Either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (internal footnote omitted) (quoting RESTATEMENT (SECOND) OF TORTS § 558) (Am.

Law Inst. 1977)). Below are the remaining statements published by

CNN, NBC, and The Post:

**CNN's Statements**:[4]

> (1) *Statement Number 24, Paragraph 12.17 of Plaintiffs' Appendix to the complaint:*

"What the young man was doing was blocking my escape. I wanted to leave. I was thinking, 'How do I get myself out of this? I wanted to get away from it,' Phillips said."

"Phillips has said the teen [Sandmann] blocked his escape."

Asked if he should have walked away, Phillips said he tried but couldn't. 'I was blocked,' he said.

> (2) *Statement 33, Paragraph 12.26 of Plaintiffs' Appendix to the complaint:*

CNN question: "The young man that was standing in front of you, what was he doing and what was he trying to do as you were playing the drum. Were you fearful? Were you trying to leave?"

Phillips Answer: ". . . I had realized where I'm at and what I was doing, and I realized there was other people with me and I didn't want them to get hurt because there was *100-plus* of these young men who were well-fed and healthy and strong and ready to do harm to somebody. And they just wanted that point of 'This is it' and spring. If this young man thought that he was [at] that point and what I was trying to do, I realized where I was at. I needed an out. I needed to escape. I needed to get away. I needed to retreat somehow, but the only way I could retreat at that moment, is what I see, is just to go forward, and when I started going forward and that mass groups of people started separating and moving aside to allow me to move out of the way or to proceed, this young fellow put himself in front of me and wouldn't move. If I took another step, I would be putting my

---

[4] *Sandmann v. Cable News Network, Inc.*, Cov. Civil Action No. 2:19-cv-31: (Doc. 43 at 2) (citing Doc. 31-10 (CNN's chart of challenged statements filed with its MTD)).

person into his presence, into his space and I would've
touched him and that would've been the thing that the
group of people would've needed to spring on me. Because
if I would've reached out with my drum or with my hands
and touched him, that would've given them – I did that.
I struck out, and that's not what I was doing. The song
I was singing, the reason for it, was to bring unity and
to bring love and compassion back into our minds and our
beings as men and as protector of what is right . . .."

(emphasis added).

>>> (3)   *Statement 49, Paragraph 12.38 of Plaintiffs'
>>>       Appendix to the complaint:*

"Phillips said the students surrounded him, and Sandmann
blocked his path to the Lincoln Memorial steps. He heard
some students chant, 'Build the wall,' he said."

>>> (4)   *Statement 51, Paragraph 12.40 of Plaintiffs'
>>>       Appendix to the complaint:*

"Phillips, on the other hand, told CNN this week he felt
hatred coming from the young people in the crowd. When
asked about Nick standing in front of him, Phillips told
CNN he was trying to retreat and the only way he could
do so was to go forward. 'When I started going forward
and that mass group of people started separating and
moving aside to allow me to move out of the way or to
proceed, this young fellow put himself in front of me
and wouldn't move,' Phillips said."

**NBC's Statements:**[5]

>>> (1)   *Paragraph 402(c), Paragraph 10.13 of
>>>       Plaintiffs' Appendix to the complaint:*

"Phillips' account has been interpreted differently. On
Saturday, he told The Washington Post 'he felt
threatened by the teens and that they swarmed around
him.' When he tried to leave, '*that guy in the hat
wouldn't let him retreat.*' But he's also told The Detroit
Free Press that he decided to intervene between the
students and the other group, calling it the moment he
put himself 'between beast and prey.'"

---

[5] *Sandmann v. NBCUniversal Media, LLC,* Cov. Civil Action No. 2:19-cv-56: (Doc.
43 at 3) (citing Doc. 23 (Sandmann's first amended complaint)).

> > (2) Paragraph 457(d), Paragraph 10.20 of
> > Plaintiffs' Appendix to the complaint:

(Guthrie) "He [Nicholas] said yes, he thinks now he should have walked away. Do you think, sir, you should have walked away?"

(Phillips) "That's what I was trying to do. I was trying to walk away. There was a spot, there was a place where I could take my peoples because we were surrounded. We couldn't go right. We couldn't go left, back. And then, I was still in prayer, still singing, and then I was looking past the crowd and I took that first step *and that crowd backed up*. I took a second step *and that crowd started scattering or breaking apart there*. And I took a third part [sic] and I actually seen a space, a clear space, and I said that's the spot, and we started going that way. And from somewhere, from a clear space, *a person was there* (gesturing)."

> > (3) Paragraph 457(e), Paragraph 10.20 of
> > Plaintiffs' Appendix to the complaint:

(Guthrie) "You feel you were blocked?"

(Phillips) "Oh, *I was blocked*."

> > (4) Paragraph 500(f), Paragraph 10.20 of
> > Plaintiffs' Appendix to the complaint:

"In an interview with the Washington Post, Phillips said he felt threatened by the teens. 'It was getting ugly, and I was thinking: 'I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial,' he said. 'I started going that way, *and that guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat.*'"

> > (5) Paragraph 549(c), Paragraph 10.20 of
> > Plaintiffs' Appendix to the complaint:

"'That mass of young men surrounded me and the folks that were with me,' Phillips said, adding that when [sic] he did find a clearing to walk through, but suddenly in the 'clear space, *a person was there*.' '*I was blocked*,' Phillips said."

**The Post's Statements**:[6]

> *(1)  Statement 10, Paragraph 9.7 of Plaintiffs'
>        Appendix to the complaint:*

"[T]hat guy in the hat stood in my way and we were at an impasse. He just blocked by way and wouldn't allow me to retreat."

> *(2)  Statement 11, Paragraph 9.8 of Plaintiffs'
>        Appendix to the complaint:*

"[A] teen, shown smirking at him in the video, was blocking him from moving."

> *(3)  Statement 33, Paragraph 9.19 of Plaintiffs'
>        Appendix to the complaint:*

"[T]hat guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat."

**"Of and Concerning" Analysis**:

"When the defamatory statement does not name the defamed person, that person must prove that the article refers to himself." *E. W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978). The question here is whether Plaintiffs have shown that despite not being named in the articles, defendants' statements were "of and concerning" them. In short, they have not.

The first element of a defamation claim requires that the challenged statements be "about" or "concerning" the allegedly defamed party. *Stringer v. Wal-Mart Stores-Inc.*, 151 S.W.3d 781,

---

[6] *Sandmann v. WP Company LLC, d/b/a The Washington Post*, Cov. Civil Action No. 2:19-cv-19: (Doc. 64 at 2 (this Court's Order granting Sandmann's motion to reconsider concerning three statements)) (citing Doc. 47 at 30-36 (this Court's chart of the challenged statements alleged to be defamatory)).

793 (Ky. 2004); *see also Rosenblatt v. Baer*, 383 U.S. 75, 81 (1966). Plaintiffs "need not be specifically identified in the defamatory matter itself so long as it was so reasonably understood by plaintiffs 'friends and acquaintances . . . familiar with the incident.'" *Stringer*, 151 S.W.3d at 794 (quoting *Cholmondelay*, 569 S.W.2d at 702). But this rule is limited by the principle, memorialized in the Restatement,[7] that "where defamatory statements are made against an aggregate body of persons, an individual member not specifically imputed or designated cannot maintain an action." *See, e.g., Louisville Times v. Stivers*, 68 S.W.2d 411, 412 (Ky. 1934) (citations omitted).

Here, unlike Sandmann's claims based statements Phillips made explicitly about Sandmann blocking him, Plaintiffs were among a larger group of students on the Lincoln Memorial steps that were never named. This means Plaintiffs "must be able to show [they are] the one[s] . . . the article is directed" at. *Stivers*, 68 S.W.2d at 412. "As the size of the group increases, it becomes more and more difficult for the plaintiff to show he was the one at whom the article was directed[.]" *Id.*

---

[7] Rest. 2d § 564A cmt. a ("no action lies for the publication of defamatory words concerning a large group or class of persons" and "no individual member of the group can recover for such broad and general defamation."); *id.* at cmt. c ("the assertion that one man out of a group of 25 has stolen an automobile may not sufficiently defame any member of the group, while the statement that all but one of a group of 25 are thieves may cast a reflection upon each of them").

Plaintiffs do not contest this rule but argue instead that the statements are reasonably discernable to be "of and concerning" them because there are only eleven students suing.[8] This argument is without merit. If plaintiffs were able to arbitrarily carve out subgroups of the larger group mentioned in the challenged publication, then the group liability doctrine would cease to exist. *See e.g., Loftus v. Nazari*, 21 F.Supp.3d 849, 854 (E.D. Ky. 2014) (a single plaintiff physician could not support her defamation claim based on "remarks about the medical profession" because "a member of a class has no claim against someone defaming the class as a whole").

Alternatively, Plaintiffs argue that the article was "of and concerning" them because some of the Plaintiffs were readily identified from pictures and hyperlinks placed on the internet. This argument is also misguided.

First, Plaintiffs do not identify any articles, hyperlinks, or photographs used by the defendants to narrow the subgroup down to these twelve Plaintiffs. Second, even if some or all the Plaintiffs were pictured, Plaintiffs have not shown that they were the subject of the story, unlike Sandmann when he was pictured in front of Phillips. Simply put, these allegations do not enable the Court to reasonably infer that the articles were "of and

---

[8] This appears to be a typographical error by Plaintiffs, as there are twelve named plaintiffs, and none have sought dismissal or been terminated from this case.

12

concerning" the twelve named Plaintiffs. *See e.g., Learning Care Grp., Inc. v. Armetta*, 2014 WL 12651264, at *14 (D. Conn. Sept. 30, 2014). Nevertheless, while their arguments are unfounded, the statements made in the articles must be examined to determine if the named plaintiffs can be discerned.

*(1)   Statements published by CNN*

Of the four statements made by CNN, only statements 33, 49, and 51 discuss the student body beyond Sandmann. Statement 33 says Phillips "realized where [he was] at and what [he] was doing, and [he] realized there was other people with [him] and [he] didn't want them to get hurt because there was *100-plus* of these young men who were well-fed and healthy and strong and ready to do harm to somebody." (emphasis added). Statement 49 says "the students surrounded" Phillips. Statement 51 says Phillips "told CNN this week he felt hatred coming from the young people in the crowd."

As courts have found with many such statements, these statements are not actionable because the statements are about groups or classes in the aggregate. *See Stivers*, 68 S.W.2d at 412 (holding that plaintiff's defamation claim should have been dismissed because the statement that the "Stivers clan" had been involved in "fist fights and gun battles" was toward a group or class and not actionable as a matter of law); *Kentucky Fried Chicken, Inc. v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (affirming dismissal of defamation complaint where newspaper published

13

derogatory statement about KFC's gravy because there was "nothing in the present article which identified" or made "direct reference to" plaintiff's particular restaurant); *O'Brien v. Williamson Daily News*, 735 F.Supp. 218, 220 (E.D. Ky. 1990) (dismissing defamation claims of teachers not identified in an article that mentioned "teachers having affairs with students" because the article referred to "no identifiable group member and does not impugn the reputation of any specific member")[9], *aff'd*, 931 F.2d 893 (6th Cir. 1991). Therefore, because "the words used contain no reflection upon any particular individual, no averment can make them defamatory." *Sanders*, 563 S.W.2d at 9.

Moreover, even assuming *arguendo* that the statements could be construed as about any of the Plaintiffs, none of them are actionable for other reasons. First, Phillips' description of the crowd as "well-fed and healthy and strong and ready to do harm to somebody" (Statement 33) and stating "he felt hatred coming from the young people in the crowd" (Statement 51) are nonactionable expressions of opinion because they are "inherently subjective" and not provably false. *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 598-601 (6th Cir. 2013). Second, other statements such as people in the crowd chanting "build that wall" (Statement 49), is a

---

[9] In this case, Judge Forester adopted the report and recommendation of Judge (then Magistrate Judge) Hood, holding that statements concerning a group of more than 25 persons were not "of and concerning" any of them. Here, Phillips stated that the group of students was approximately 100.

14

mainstream political expression that is not actionable. *See Sandmann v. WP Co. LLC*, 401 F.Supp.3d 781, 795 (E.D. Ky. July 26, 2019). Third, the "blocking" statements Plaintiffs incorporate actually acknowledge that people near Sandmann "started separating and moving aside to allow [Phillips] to move out of the way or to proceed" (Statements 33, 51). Therefore, these defamatory claims fail against CNN.

### *(2)  Statements published by NBC*

Of the five paragraphs about which this Court permitted Sandmann to proceed to discovery, only paragraphs 402(c), 457(d), 500(f), and 549(c) discuss the group of CCH students.

Paragraph 402(c) says Phillips "felt threatened by the teens and that they swarmed around him" and he "told The Detroit Free Press that he decided to intervene between the students and the other group, calling it the moment he put himself 'between beast and prey.'"

Paragraph 457(d) says Phillips "was looking past the crowd and [he] took that first step and that crowd backed up. [Phillips] took a second step and that crowd started scattering or breaking apart there. And [he] took a third [step] and [he] actually seen a space, clear space, and [he] said that's the spot, and we started going that way. And from somewhere, from a clear space, a person was there (gesturing)."

Paragraph 500(f) says "Phillips said he felt threatened by the teens. 'It was getting ugly, and I was thinking: 'I've got to find myself an exit out of this situation and finish my song at the Lincoln Memorial[.]" Finally, paragraph 549(c) says "[t]hat *mass of young men* surrounded me and the folks that were with me . . . [and] when [sic] he did find a clearing to walk through . . . suddenly in the 'clear space a person was there.'" (emphasis added).

Here again, these statements are not actionable because the statements are about groups or classes in the aggregate, as in *Stivers*, *Sanders*, and *O'Brien*. Moreover, even if the statements were "of and concerning" Plaintiffs, the statements in paragraph 402(c) about feeling "threatened", "swarmed", and feeling like he was "between beast and prey" are nonactionable expressions of opinion because they are "inherently subjective" and not provably false. This applies equally to the statements in paragraphs 500(f) and 549(c). Finally, the blocking statement in paragraph 457(d) acknowledges that the crowd separated when Phillips began walking through it. Therefore, the defamatory claims fail against NBC.

*(3)   Statements published by The Post*

Finally, the remaining three statements are clearly not "of and concerning" Plaintiffs because they only refer to Sandmann:

- "[T]hat guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat," (Statement 10);

16

- "[A] teen, shown smirking at him in the video, was blocking him from moving." (Statement 11); and

- "[T]hat guy in the hat stood in my way and we were at an impasse. He just blocked my way and wouldn't allow me to retreat." (Statement 33).

Therefore, Plaintiffs' defamatory claims against The Post fail.

In sum, Plaintiffs have not stated a facially plausible claim of defamation against CNN, NBC, or the Post. Therefore, this claim will be dismissed with prejudice.

### 2. Invasion of Privacy

Plaintiffs allege that CNN, NBC, and The Post "intentionally intruded upon the solitude or seclusion of the Plaintiffs in their private affairs or concerns, including within the privacy and sanctity of their homes and their schools (CCH), in a manner that would be highly offensive to a reasonable person."

The Kentucky Supreme Court has adopted the Restatement (Second) of Torts' principles for the tort of invasion of privacy. *McCall v. Courier-Journal and Louisville Times Co.*, 623 S.W.2d 882, 887 (Ky. 1981) (quoting RESTATEMENT (SECOND) OF TORTS § 652A (1976)) (stating that the right of privacy is invaded by : "(a) an unreasonable intrusion upon the seclusion of another . . ..; or (b) appropriation of the other's name or likeness . . ..; or (c) unreasonable publicity given to the other's private life . . ..; or (d) publicity that unreasonably places the other in a false light before the public"). "Each form of invasion of privacy

includes different elements." *K.K. by and through J.K v. Clark County Bd. Of Educ.*, 2020 WL 734473, at *10 (E.D. Ky. Feb. 13, 2020) (citations omitted).

While Plaintiffs' complaints seem to allege an invasion of privacy through an unreasonable intrusion upon seclusion, Plaintiffs argue that the defendants invaded their privacy by both unreasonably intruding upon their seclusion and unreasonably placing them in a false light before the public in a manner that would be highly offensives to a reasonable person. They argue both theories are properly pleaded in the language that the defendants "intruded upon the solitude or seclusion of the Plaintiffs" and did so "in a manner that would be highly offensive to a reasonable person."

First, it is improper for this Court to consider Plaintiffs' false light allegations because no facts were pled in Sandmann's complaints or Plaintiffs complaints to suggest that the defendants placed Plaintiffs in a false light. *See Assoc. Gen. Contractors of Cal., Inc. v. Cal State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("As the case comes to us, we must assume that the Union can prove the facts alleged in its amended complaint. It is not, however, proper to assume that the Union can prove facts that it has not alleged").

Second, Plaintiffs do not contest that the recordings were made in public, at the National Mall, by third parties on their

18

private cellular devices. "[T]here can be no invasion of privacy where the plaintiff is engaging in conduct in a public place." *Armstrong v. NBC Universal Inc.*, 2012 WL 4098984, at *2 (W.D. Ky. Sept. 17, 2012) (citing Rest. 2d § 652B cmt. c); *see also* 1 Sack on Defamation § 16:6 (Intrusion tort "governs conduct such as breaking and entering, surreptitious surveillance, unauthorized physical presence, unauthorized photography, and the like . . . activities that do not actually intrude, such as the photographing or recording of events taking place outside a person's home, do not ordinarily give rise to a cause of action, despite the upset that they may cause"). Here, Plaintiffs' invasion of privacy claim fails because the events took place in public. Therefore, it will also be dismissed with prejudice.

### 3. Aiding and Abetting

Plaintiffs allege that CNN, NBC, and The Post "knowingly, recklessly negligently, and with legal malice aided and abetted the foreseeable, wrongful and tortious conduct of other persons against the Plaintiffs, thereby substantially assisting and encouraging such conduct."

Kentucky defines an aiding-and-abetting claim pursuant to the RESTATEMENT (SECOND) OF TORTS § 876. *See Farmer v. City of Newport*, 748 S.W.2d 162 (Ky. Ct. App. 1988). To state a claim, Plaintiffs must show: (1) a violation of the law by the party allegedly aided and abetted; (2) the defendant's knowledge of the violation; and (3)

the defendant's conscious rendering of substantial assistance to the aided and abetted party to violate the law. *Id.*; *see also Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016).

This claim fails for multiple reasons. First, Plaintiffs did not identify a legally cognizable predicate tort committed by a third party that the defendants could have aided and abetted in. *Cowing*, 499 S.W.3d at 294 (concluding that before a defendant can be liable for aiding and abetting, the plaintiff must show a violation of the law by the principal and identify the participant).

Next, Plaintiffs are presumably alleging that the defendants aided and abetted in defaming and invading Plaintiffs' privacy, but the Sixth Circuit has held that a plaintiff cannot prevail on this theory "without carrying the same . . . burden he must carry in a garden-variety defamation case." *Higgins v. Kentucky Sports Radio, LLC*, 951 F.3d 728, 739 (6th Cir. 2020).

Finally, beyond reporting the events of the day, it is unclear how the defendants substantially assisted an unidentified party to violate any law. Therefore, Plaintiffs fail to state a facially plausible claim for aiding and abetting against CNN, NBC, and The Post, and this claim will be dismissed with prejudice.

**B.** <u>**CNN's Motion to Dismiss Must be Granted as to the Statutory**</u>
<u>**Causes of Action**</u>

Next, Plaintiffs seek to use four of Kentucky's "true threat" statutes to impute negligence against only CNN, based on a tweet about the CCH students by CNN's alleged agent, Sellers. (Doc. 31 at 11). Plaintiffs rely on Kentucky's common law negligence per se statute,[10] Ky. Rev. Stat. § 446.070, which provides "[a] person injured by the violation of *any statute* may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." (Doc. 1 at ¶ 20) (emphasis added).

Plaintiffs allege that "[a]t 7:09 a.m. on January 19, 2019, Defendant CNN, through its agent analyst Defendant Sellers, harassed, threatened, and menaced the Plaintiffs stating in reference to their involvement in the Lincoln Memorial incident, that Nicholas Sandmann was 'a deplorable' and that he and his fellow CCH students, including each of the Plaintiffs, deserved to 'be punched in the face.'"[11] (Doc. 1 at ¶ 9).

---

[10] A negligence per se claim is a negligence claim where a statutory standard of care is substituted for the common-law standard of care. *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2005). While the language in Section 446.070 is broad, Kentucky courts require plaintiffs to prove the following three elements: (1) that the underlying statute is criminal in nature without an inclusive civil remedy, (2) that the plaintiff is within the class of persons the statute is intended to protect, and (3) that the plaintiff's injury is the type of injury the statute was designed to prevent. *Hickey v. Gen. Elec. Co.*, 539 S.W.3d 19, 23-24 (Ky. 2018).
[11] The tweet, in full, reads as follows:
"He is a deplorable. Some ppl can also be punched in the face." (Doc. 25-3).

CNN and Sellers deny that Sellers is an employee, arguing instead that he is an independent contractor. (Doc. 25-2 at ¶ 11). Plaintiffs argue the factual determination between an independent contractor and an employee is for the jury, not the Court, to make. (Doc. 31 at 11-12).

At this stage of the litigation, Plaintiffs are afforded all reasonable inferences and their allegations are accepted as true. *Iqbal*, 556 U.S. at 678; *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). Therefore, given Plaintiffs' allegation that Sellers is an agent of CNN and Sellers' concession that he has contracted with CNN for several years to provide on-air appearances for CNN, the Court will accept Plaintiffs' allegation as true, but still consider whether the allegations under the statutes are facially plausible.

Plaintiffs concede that the only issue is whether Sellers' tweet that "Some [people] can also be punched in the face" falls under the purview of: (1) KRS § 525.070(1)(e) (Harassment); (2) KRS § 525.080(1)(a) (Harassing Communications); KRS § 508.080(1)(a) (Threatening); and (4) KRS ¶ 508.050 (Menacing). (Doc. 31 at 11). (Doc. 1 at ¶ 9).

Not only does this statement not meet the elements required for the statutes, but even assuming the elements were met, the First Amendment protects such speech. *See Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969).

22

**1. True Threat Statutes**

Plaintiffs do not plead sufficient facts to raise a reasonable inference that Sellers' tweet falls under any of the true threat statutes.

First, Plaintiffs allege that CNN "engaged in Harassment in violation of KRS § 525.070(1)(e) when, with intent to intimidate, harass, annoy, or alarm the Plaintiffs, they engaged in a course of conduct or repeatedly committed acts which alarmed or seriously annoyed the Plaintiffs, and which served no legitimate purpose." (Doc. 1 at ¶ 22). This criminal statute provides that "[a] person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she: [e]ngages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose[.]" Ky. Rev. Stat. § 525.070(1)(e).

Here, there are no facts to suggest that Sellers engaged in a course of conduct or repeatedly committed acts beyond his one tweet. Plaintiffs' allegations rest on a single tweet about an unidentified group of CCH students. Therefore, this claim fails.

Second, Plaintiffs allege that CNN "engaged in Harassing Communications in violation of KRS § 525.080(1)(a) when, with intent to intimidate, harass, annoy, or alarm the Plaintiffs, they communicated with a person anonymously or otherwise, by telephone, telegraph, mail, or other form of electronic or written

communication in a manner which caused annoyance or alarm, and served no purpose of legitimate communication." (Doc. 1 at ¶ 28). This criminal statute provides that "[a] person is guilty of harassing communications when, with intent to intimidate, harass, annoy, or alarm another person, he or she: [c]ommunicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of electronic or written communication in a manner which causes annoyance or alarm and serves no purpose of legitimate communication[.]" Ky. Rev. Stat. § 525.080(1)(a).

Here, Sellers' tweet was not directed at any one person, besides Sandmann, when he posted it on the internet. His tweet was made as a general reference about Sandmann being a deplorable and suggests generally that some people can be punched in the face. Therefore, by placing this general statement on Twitter without directing it at any *person*, this claim fails to meet the elements of this statute.

Third, Plaintiffs allege that CNN "engaged in Threatening in violation of KRS § 508.080(1)(a) when they threatened to commit any crime likely to result in death or serious physical injury to the Plaintiffs or likely to result in substantial damage to their property interest." (Doc. 1 at ¶ 34). This criminal statute provides that "a person is guilty of terroristic threatening in the third degree when: [h]e threatens to commit any crime likely to result in death or serious physical injury to another person or

24

likely to result in substantial property damage to another person[.]" Ky. Rev. Stat. § 508.080(1)(a).

Here, Plaintiffs do not allege that Sellers' tweet was a call to action to find Plaintiffs and seriously injure them. Therefore, this claim fails because the statement was not something likely to result in death or serious physical injury or substantial property damage.

Fourth, Plaintiffs allege that CNN "engaged in Menacing in violation of KRS §508.050 when it intentionally placed the Plaintiffs in reasonable apprehension of imminent physical injury." (Doc. 1 at ¶ 40). This criminal statute provides that "[a] person is guilty of menacing when he intentionally places another person in reasonable apprehension of imminent physical injury." Ky. Rev. Stat. § 508.050(1).

Here, Sellers' statements were made on Twitter, not in person or in a manner which called for his followers to immediately locate and injure the named Plaintiffs. Therefore, this claim fails because Sellers' tweet cannot be read to place Plaintiffs in "reasonable apprehension of imminent physical injury."

In sum, there is only one conclusion this Court can reach: Plaintiffs did not plead sufficient facts to show the statements were made about them in a manner to subject them to imminent harm. This is because, as described below, if CNN could be held liable for this single tweet, it would run afoul of the First Amendment.

25

**2. First Amendment Protection**

Under the First Amendment to the United States Constitution, "Congress shall make no law . . . abridging the freedom of speech[.]" U.S. CONST. AMEND. I. This prohibition was eventually extended from the federal government to the States through the Fourteenth Amendment. *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940). The Supreme Court has held that the First Amendment places a high value on the right of people to engage freely in the power of persuasion by engaging in discussions that might draw vastly opposing views. *Meyer v. Grant*, 486 U.S. 414, 421 (1988). This right, however, is not absolute. *See Citizens for Tax Reform v. Deters*, 518 F.3d 375 (6th Cir. 2008).

In *Brandenburg*, the Supreme Court recognized "the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447. Under this test, "only speech that explicitly or implicitly encourages the *imminent* use of violence or lawless action is outside the protection of the First Amendment." *Nwanguma v. Trump*, 903 F.3d 604, 609 (6th Cir. 2018) (emphasis added). What this case law makes clear is even if Plaintiffs' allegations could be deemed to state a plausible claim under Kentucky's true threat statutes, the First Amendment does

26

not permit prosecution of the statement "[s]ome [people] can also be punched in the face."

The Supreme Court has made clear that "the mere tendency of speech to encourage unlawful acts" is not a "sufficient reason for banning it." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). To forfeit one's constitutional protection, he or she must use inciteful speech that "specifically advocate[s]" for listeners to take unlawful action. *Hess v. Indiana*, 414 U.S. 105, 109 (1973).

In *Brandenburg*, at a time before people could disseminate their opinions for everyone to see on the internet, the Supreme Court found that statements made by a KKK member on a farm at a rally in Hamilton, Ohio, where they asked a reporter and cameraman to attend to film the meeting, could not be punished under an Ohio criminal statute merely because the defendant advocated for potential lawless action.[12] 395 U.S. at 445-47.

Portions of the statements filmed were later broadcast on a local station and national network. *Id.* at 445. During the defendant's speech, he said "[w]e're not a revengent organization, but if our President, our Congress, our Supreme Court continues to suppress the white, Caucasian race, it's possible that there might have to be some revengeance taken." *Id.* at 446.

---

[12] Ohio's statute prohibited anyone advocating for the propriety of a crime under any circumstances.

The Supreme Court found that because only KKK members and the reporters were present when the statements were made, the defendant could not be held criminally liable for statements merely advocating for violence if the violence is not likely to incite imminent illegal activity. *Id.* at 449.

Like the speech in *Brandenburg*, Sellers' tweet was not specifically advocating for his followers to engage in imminent lawless action against Sandmann, Plaintiffs, or any other classmates. While Sellers' statement may be deemed harsh, there is "no evidence or rational inference from the import of the language, that his words were intended to produce, and likely to produce, imminent disorder, those words could not be punished by the State on the ground that they had a tendency to lead to violence." *Hess*, 414 U.S. at 109. "In other words, *Hess* teaches that the speaker's intent to encourage violence (second factor) and the tendency of his statement to result in violence (third factor) are not enough to forfeit First Amendment protections unless the words used specifically advocate the use of violence, whether explicitly or implicitly (first factor)." *Nwanguma*, 903 F.3d at 611.

The Sixth Circuit also considered the context of the whole record in *Nwanguma*, where the plaintiff alleged that President Donald Trump instructed a crowd at his rally to "get 'em out of here". *Id.* Like *Nwanguma*, the whole record at this point consists only of the complaint. *Id.* "And while we accept well-pled factual

28

allegations as true, we are not required to accept legal conclusions masquerading as factual allegations." *Id.* (citing *Twombly*, 550 U.S. at 555). Concerning the context of the speech, the Supreme Court says a court's examination must be focused on the "content, form, and context" of the speech, and an evaluation of "the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder v. Phelps*, 562 U.S. 443, 454 (2011).

Sellers' single tweet was posted in response to public events that occurred at the Lincoln Memorial. Notably, the words were directed to unidentified followers on Sellers' Twitter account, some of which may not have been sympathetic to the students. But this does not mean Sellers' tweet was intended to elicit an immediate physical response to locate and physically harm Plaintiffs.

In *Snyder*, the Supreme Court addressed offensive speech at a military funeral where protestors opposing homosexuality in the military picketed outside the funeral of a deceased Marine, making offensive statements about the deceased Marine. 562 U.S. at 454-55. Despite the derogatory statements made about the deceased in front of friends and family outside the funeral, the Court held the speech was protected under the First Amendment because the First Amendment requires adequate breathing space for public debate, including insulting and outrageous speech. *Id.* at 458.

29

Here too, Sellers' remarks do not fall under the "narrowly limited classes of speech" that fall outside the First Amendment's protection. *Hess*, 414 U.S. at 107. Accordingly, Sellers' speech is protected and not actionable against CNN under Kentucky's true threat statutes.

Thus, having reviewed this matter, and the Court being advised,

IT IS ORDERED as follows:

1. CNN motion to dismiss, (Doc. 26) be, and is hereby, **GRANTED**;

2. NBC's motion to dismiss, (Doc. 13) be, and is hereby, **GRANTED**;

3. The Post's motion to dismiss, (Doc 21) be, and is hereby, **GRANTED**; and

4. A separate judgment shall enter concurrently herewith.

This 23rd day of December 2020.



Signed By:

*William O. Bertelsman* $\mathcal{WOB}$

**United States District Judge**